**COHEN MILSTEIN SELLERS & TOLL PLLC**
THEODORE J. LEOPOLD (to file *pro hac vice*)
tleopold@cohenmilstein.com
ANDREW N. FRIEDMAN (to file *pro hac vice*)
afriedman@cohenmilstein.com
GEOFFREY A. GRABER (SBN 211547)
ggraber@cohenmilstein.com
SALLY M. HANDMAKER (SBN 281186)
shandmaker@cohenmilstein.com
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:   (202) 408-4600
Facsimile:   (202) 408-4699

**LAW OFFICES OF CHARLES REICHMANN**
Charles P. Reichmann (SBN 206699)
16 Yale Circle
Kensington, CA 94708
Telephone:   (415) 373-8849
Facsimile:   (855) 780-6405

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **KATHLEEN INFANTE**, individually and on behalf of others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>**LUXOTTICA RETAIL NORTH AMERICA**, an Ohio corporation d/b/a LensCrafters,<br><br>            Defendant. | <u>**CLASS ACTION**</u><br><br>CASE NO. |

**CLASS ACTION COMPLAINT**

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Kathleen Infante, individually, and on behalf of all others similarly situated, hereby files suit against the Defendant listed above and alleges the following:

**INTRODUCTION**

1.      Plaintiff and class members purchased prescription eyeglasses from LensCrafters after being measured using the Accufit® Digital Measurement System ("Accufit") offered at LensCrafters.  LensCrafters touts its Accufit system as providing uniquely accurate measurements of the pupillary distance ("PD")[1] between the customer's eyes to locate the optical centers of the eyeglass lenses. LensCrafters advertises that its Accufit system "measures your eyes five times more precisely than traditional methods, down to a tenth of a millimeter" – roughly the width of a human hair.[2]  LensCrafters claims that this allows the company to manufacture prescription eyeglasses "which provides a lens fit with five times greater precision than traditional methods."[3]  Thus, LensCrafters promises better prescription eyeglasses that allow customers "to see your world more clearly," as "[y]our lenses are crafted based on exactly how glasses sit on your face, where your eyes line up in the frame, and the distance between your eyes—putting the prescription exactly where you need it to see your best."[4]

2.      However, LensCrafters cannot and does not deliver what it promises.  Even assuming its Accufit system can provide PD measurements down to a tenth of a millimeter, when it manufactures prescription eyeglasses, LensCrafters uses decades-old technology that still involves

---

[1] Pupillary distance ("PD") or interpupillary distance ("IPD") is the distance between the centers of the pupils in each eye.  The industry standard is to measure in millimeters. This measurement is used when manufacturing prescription eyeglasses.

[2] https://www.lenscrafters.com/lc-us/accufit (accessed August 28, 2017).

[3] http://www.luxottica.com/en/retail-brands/lenscrafters (accessed August 28, 2017).

[4] https://www.lenscrafters.com/lc-us/accufit (accessed August 28, 2017).

manual measurements that must be rounded up to a full millimeter.  Indeed, Lenscrafters' Accufit system provides no more accuracy in manufacturing prescription eyeglasses than when measuring PD with a standard ruler.

3.  This fact is known among LensCrafters' employees.  When customers arrive at a LensCrafters store, employees are trained to push the Accufit system as a selling point, telling customers that Accufit ensures more accurate prescription eyeglasses and emphasizing to customers that they can only use Accufit measurements at LensCrafters.  When customers ask about the Accufit system and whether it will really make their prescription eyeglasses more accurate, LensCrafters trains its employees to avoid answering the question, and to reiterate that Accufit provides PD measurements that are "five times more accurate."

4.  Because LensCrafters' manufacturing process uses the *same* decades-old traditional methods, the end-product sold to customers cannot and does not have PD measurements that are "five times" more accurate than traditional methods.

5.  Customers are therefore induced to purchase prescription eyeglasses from LensCrafters when they otherwise would not have and/or overpay for prescription eyeglasses from LensCrafters based on false and misleading statements, and suffer damages.

## PARTIES

6.  Plaintiff Kathleen Infante is a citizen and resident of California, over the age of eighteen years.  Plaintiff purchased prescription eyeglasses from LensCrafters for approximately $360 after being measured by Accufit in or about November 2015.

7.  Defendant Luxottica Retail North America d/b/a LensCrafters ("LensCrafters") is a citizen and resident of Ohio which regularly does business in California and all over the United States.  LensCrafters is headquartered at 4000 Luxottica Place, Mason, OH 45040.

**CLASS ACTION COMPLAINT**

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction for this case pursuant to 28 U.S.C. § 1332(d), as it is a class action for damages that exceed $5,000,000, exclusive of interest and costs.  Named Plaintiff is a resident of California, and many other members of the class are from states different from Defendant, which is headquartered in Ohio.

9.      This Court has personal jurisdiction over Defendant because of its continuous and systematic business contacts with the State of California, including the fact that LensCrafters has over 140 stores in California and derives substantial revenue from sales of its products in California, with knowledge that its products are being marketed and sold for use in this State.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district.

**FACTUAL ALLEGATIONS**

**A.      The Eyeglass Industry and Manufacturing Process for Prescription Lenses**

11.      LensCrafters is a national eye care provider and prescription eyeglass manufacturer maintaining over 950 locations in the United States.[5]  The company was founded in 1983 and began to operate as a subsidiary of Luxottica Retail North America, Inc. in approximately 1995. LensCrafters is one of the largest companies in the $28 billion worldwide ophthalmic industry.[6]  In 2013, LensCrafters was estimated to serve more than four million customers each year and described itself as the "single most powerful player in the optical category . . ."[7]  Its sales exceeded $1.8 billion

---

[5] *See* http://local.lenscrafters.com/ (accessed August 28, 2017).

[6] https://www.forbes.com/sites/anaswanson/2014/09/10/meet-the-four-eyed-eight-tentacled-monopoly-that-is-making-your-glasses-so-expensive/#1ebf22bb6b66 (accessed August 28, 2017).

[7] http://www.luxottica.com/sites/luxottica.com/files/2013_10_08_-_luxottica_investor_day_-_transcript.pdf (accessed August 28, 2017).

**CLASS ACTION COMPLAINT**

in 2013.[8]

12.     The process for fabricating prescription eyeglasses typically begins with lens "blanks," which are thick, clear blocks made of either glass or polymers.  After receiving a prescription order, a laboratory technician will select lens blanks that correspond to the prescription for each lens.

13.     A protective layer of adhesive tape is then applied to each lens blank to protect it from damage during the manufacturing process.

14.     The laboratory technician then attaches what is known as a "block" to the front of each lens blank.  Each lens, still attached to the block, is then placed in a machine called a blocker, which can be manual or digital.

15.     The blockers contain a heated metal alloy that melds each blocker to the front of each lens blank.  This process ensures that lenses are securely mounted and correctly positioned for the machining process, which includes surfacing, polishing and engraving.  The blocking process is critical because it is "not only the start, but also the cornerstone of the entire lens production process."[9]  Improper blocking results in inaccurate lenses "as the accuracy of the lens block directly influences the machining accuracy . . ."[10]

16.     After securing the lens blanks to the blocks, the laboratory technician locates and marks the optical center of each lens blank.  The optical center is the point at which vision is best in the lens, and is centered over the customer's pupil.

17.     Laboratory technicians use the customer's pupillary distance measurement(s) to

---

[8] *Id.*

[9] http://www.satisloh.com/fileadmin/contents/brochures/Ophthalmic/Blocking_and_deblocking/Blocking_Overview_2016_EN.pdf; https://www.google.ch/patents/US7946325?hl=de (accessed August 28, 2017).

[10] *Id.*

**CLASS ACTION COMPLAINT**

locate the optical center of each lens.

18.    After blocking, the lens blanks (still attached to the blocks) are attached to a lens generator and aligned.  The lenses are ground until attaining the desired thickness and curves based on the individual's prescription.

19.    The lenses are then placed in a surfacing machine to remove any marks left by the generator through a process called "fining" or "edging."  When fining is complete, lenses are polished by another machine.

20.    The technician then removes the lens block before conducting any final inspections or lens enhancements such as an anti-reflective enhancement or scratch resistance.

21.    Finally, the lenses are placed in the frame and delivered to the customer.

**B.    LensCrafters and Its "Accufit" System**

22.    LensCrafters initially marketed itself as unique among prescription eyeglass manufacturers for its ability to manufacture glasses within one hour.[11]  However, LensCrafters has not been able to fulfill its one-hour promise and has shifted its advertising away from that campaign.[12]

23.    In or about 2011, LensCrafters introduced its Accufit Digital Measurement System.[13]

---

[11] https://www.lenscrafters.com/lc-us/about-lenscrafters?sid=OurVisionDD-LeftLink-AboutLC-US-112413 (accessed August 28, 2017).

[12] LensCrafters' website now states that "[i]n select locations, we may be able to make your glasses same-day or in about an hour.  The ability to do so depends upon your particular prescription, the frame you choose, the lenses and options you select, and whether the store you visit has an onsite lab.  If you are looking for same-day service, please let our store associates know so they can direct you toward options that they may be able to complete in-house.  To accommodate the many product enhancements that are now available, special processing is sometimes required.  These orders are typically processed within 7-14 business days."  http://www.lenscrafters.com/lc-us/customer-service/faq (accessed August 28, 2017).

[13] Confidential Witness 1, Former LensCrafters Licensed Laboratory Manager ("CW 1"); Confidential Witness 2, Former LensCrafters Licensed Laboratory Manager and Former General Manager ("CW 2."); https://www.lenscrafters.ca/lc-ca/about-lenscrafters (accessed August 28,

**CLASS ACTION COMPLAINT**

24.     According to LensCrafters, Accufit is "5 times more precise" than manual PD measurements and "measures the exact location of your pupils, the spacing of your eyes, and the shape of your glasses so [LensCrafters] can place your prescription in your lenses exactly where you need it to see your best."[14]

25.     The Accufit system is a process that involves attaching a "fit sensor" to the frames selected by customers and using cameras and lasers to take measurements, including PD (the distance between the pupils).

26.     LensCrafters claims that the Accufit system measures down to the tenth of a millimeter – which is roughly the width of a human hair – and that these measurements allow LensCrafters to manufacture prescription eyeglass that are far more accurate than prescription eyeglasses manufactured based on traditional PD measurements.  According to LensCrafters, its Accufit technology "is fully integrated with [its] lens manufacturing system, so that [LensCrafters] can collect all the data and [it] can provide manufacturing of perfect customized lenses."[15]

27.     Accufit became a central component of LensCrafters' marketing strategy.  Indeed, through television commercials, online advertising,[16] in-store marketing, and in-store employee sales pitches, Accufit is touted as the differentiating feature for LensCrafters and the reason why customers should purchase their prescription eyeglasses from LensCrafters.

28.     For example, on its website, LensCrafters tells customers and potential customers that the difference between traditional measurements and its Accufit system is "massive:"

---

2017).

[14] https://www.lenscrafters.com/AccuFit (accessed August 28, 2017).

[15] http://www.luxottica.com/sites/luxottica.com/files/2013_10_08_-_luxottica_investor_day_-_transcript.pdf (accessed August 28, 2017).

[16] *See, e.g.*, https://www.youtube.com/watch?v=4irrLTuPfXQ.

**CLASS ACTION COMPLAINT**



[Text reads:  "WHY A TENTH OF A MILLIMETER IS MASSIVE" and "Accufit® is our exclusive digital scanning system that measures your eyes five times more precisely than traditional methods, down to a tenth of a millimeter.  This means we can craft lenses more accurately and help you see the world more clearly."][17]

29.    LensCrafters' website goes on to state that:

**The old way will never
measure up.**

Goodbye rulers, hello super hi-tech future machines. The
LensCrafters AccuFit system replaces old-fashioned hand-held
measuring tools with a state-of-the-art digital system that is 5 times
more precise.
. . .

Accufit digitally measures the exact location of your pupils, the
spacing of your eyes, and the shape of your glasses so we can place
your prescription in your lenses exactly where you need it to see
your best.
It's time to see what you're missing.[18]

30.    LensCrafters' parent company's corporate website states that the Accufit system

results in more accurate lenses:  "LensCrafters has made significant investments in technology

including AccuFit Digital Measurement™, which provides a lens fit with five times greater precision

---

[17] http://www.businesswire.com/news/home/20140130005961/en/LensCrafters-Takes-Stand-Quality-Vision-Care-Global (accessed August 28, 2017).

[18] https://www.lenscrafters.com/AccuFit (accessed August 28, 2017).

**CLASS ACTION COMPLAINT**

than traditional methods."[19]

31.     LensCrafters makes similar representations in its filings with the Securities and Exchange Commission:  The "Accufit Digital Measurement™ . . . provides a lens fit with five times greater precision than traditional methods . . ."[20]

32.     LensCrafters also touts its Accufit system in its stores, prominently displaying advertisements for Accufit, including its purported "5X" greater accuracy in measuring pupillary distance and its supposed benefits in making a customers' prescription eyeglasses more accurate:



[21]

[19] http://www.luxottica.com/en/retail-brands/lenscrafters) (accessed August 28, 2017).

[20] http://sec.edgar-online.com/luxottica-group-spa/20-f-annual-and-transition-report-foreign-private-issuer/2014/04/29/section6.aspx; https://www.sec.gov/Archives/edgar/data/857471/000104746917003023/a2231810z20-f.htm (accessed August 28, 2017).

[21] http://www.tuttleeye.com/files/2014/01/photo.jpg (accessed August 28, 2017).

33.     This type of visual advertising is particularly important to LensCrafters' business model, as "[m]ost LensCrafters stores are located in high-traffic commercial malls and shopping centers."[22]

34.     In addition, LensCrafters' store employees were instructed to push the Accufit system by telling customers that its measurements were five times more accurate and that they should buy their prescription eyeglasses from LensCrafters because Accufit would make their prescription eyeglasses more accurate.

35.     Store employees understood the emphasis on Accufit to be the result of LensCrafters' inability to manufacture prescription eyeglasses in one hour, its previous key sales pitch.[23]

36.     Contrary to LensCrafters' representations, however, the Accufit system does not lead to more accurate prescription eyeglasses.

37.     Even assuming the Accufit technology is, as advertised, five times more accurate than manual measurements,[24] **LensCrafters cannot and does not translate the measurements taken from the Accufit system into its manufacturing process.**  Without the ability to translate supposedly more accurate measurements into the manufacturing process, LensCrafters' Accufit system is no more effective in making prescription eyeglasses accurate than using the standard ruler to measure PD.

38.     Indeed, it was common knowledge among LensCrafters' employees that the Accufit system provided no benefit in making prescription eyeglasses more accurate because LensCrafters' manufacturing equipment cannot measure beyond one millimeter, which is the same measuring

---

[22]http://www.luxottica.com/en/retail-brands/lenscrafters (accessed August 28, 2017).

[23] CW 1; CW 2.

[24] This claim is dubious given the fact that skilled opticians use "their professional experience to evaluate your fitting needs based on many parameters that a machine cannot discern, such as your posture."  https://www.specsoptical.com/lab/ (accessed August 28, 2017).

**CLASS ACTION COMPLAINT**

capability as a standard ruler.[25]

39.     For example, Confidential Witness 1, a former LensCrafters Licensed Laboratory Manager, who worked at the company for approximately 16 years, states that: "Despite hyping the Accufit measuring system and its more accurately crafted glasses, the LensCrafters stores never changed their equipment for manufacturing the glasses."  In 2011, this former Laboratory Manager asked the LensCrafters store's General Manager "when LensCrafters would update its laboratory equipment so that our glasses could be manufactured to one-tenth of a millimeter."  The Laboratory Manager responded that "LensCrafters had no such plans."

40.     Rather than updating its laboratory equipment to more expensive, state-of-the-art machines that can use digital measurements, LensCrafters continued to use decades-old equipment that is only capable of making use of manual measurements.

41.     According to confidential witnesses, in particular, many of LensCrafters' laboratories, including its large, regional laboratories, use Coburn CS7 blockers, which were first sold in the 1970s and are no longer manufactured.  The Coburn CS7 blockers require the laboratory technician to lay out manually the lenses on a one-millimeter grid for the finished layout process.  This is the step used for the pupillary distance measurement.  Therefore, even if Accufit provided a measurement of one-tenth of a millimeter, LensCrafters employees could not position the lenses to one-tenth of a millimeter.

42.     Even though Accufit provides no benefit in the manufacturing of prescription eyeglasses, according to confidential witnesses, LensCrafters employees were instructed to use Accufit as a selling point by touting its supposed accuracy in measuring pupillary distance, that it would make customers' prescription glasses more accurate, and that customers could only use the Accufit measurements at LensCrafters.

---

[25] CW 1; CW 2.

**CLASS ACTION COMPLAINT**

43.     Further, according to confidential witnesses, LensCrafters also instructed employees to avoid discussing the manufacturing process when customers asked questions about Accufit. Instead, LensCrafters trained employees to keep emphasizing that Accufit was "five times more accurate" in determining PD measurements.

44.     Notwithstanding these directives, LensCrafters knows that Accufit provides no benefits and cannot be translated into the actual manufacturing process.  For example, according to confidential witnesses, frequently after showing a customer his or her Accufit measurement, the LensCrafter associate doing the Accufit measurement will simply round the result to a whole millimeter before sending the results to the laboratory.  And, even if the full tenth-of-a-millimeter measurements are sent to the laboratory, a technician in the laboratory will round the number before placing the lenses on a blocker, because LensCrafters equipment can only measure to a whole millimeter, not to a tenth of a millimeter.

45.     LensCrafters employees know that laboratory equipment does not have the capability to craft eyeglasses with pupillary distance measurements that are accurate down to one-tenth of a millimeter, and that the use of the Accufit measurement system is not beneficial.  And, many of them are frustrated by the company's false and misleading statements regarding the Accufit system.  For example, during a training session conducted by Confidential Witness 1, a new laboratory technician observed that LensCrafters does not have laboratory equipment to craft lenses with pupillary distance measurements that are accurate down to one-tenth of a millimeter.  The trainee reacted by saying, "so it's all a big lie."

46.     On information and belief, all customers who purchased prescription eyeglasses from LensCrafters during the proposed Class Period (defined below) were measured using Accufit.

12

**CLASS ACTION COMPLAINT**

C.      **Plaintiff's Experience**

47.     Plaintiff Kathleen Infante purchased prescription glasses after being measured with Accufit in Menlo Park, California in or about November 2015.

48.     Prior to her purchase, a LensCrafters employee told Ms. Infante about Accufit, which was material to her purchasing decision.  The employee's description of Accufit made Ms. Infante believe that she was getting a better product than she would have elsewhere.

49.     Ms. Infante would not have purchased her prescription glasses from LensCrafters and/or would not have paid as much as she did had she known that LensCrafters' claims that Accufit is "five times more accurate" were not translated into the manufacture of her lenses.

## CLASS ALLEGATIONS

50.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 49.

51.     Pursuant to the Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff seeks a statewide class consisting of all residents of California who purchased prescription eyeglasses from LensCrafters from September 5, 2011 to present (the "Class" and the "Class Period," respectively).

52.     Excluded from the Class are the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

53.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements. Plaintiff seeks to represent an ascertainable Class, as determining inclusion in the class can be done through the Defendant's own records.

54.     Plaintiff reserves the right to amend the Class definition if discovery and further

**CLASS ACTION COMPLAINT**

investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

55.     Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiff believes, and on that basis alleges, that the proposed Class is so numerous that joinder of all members would be impracticable as Defendant has sold thousands of prescription eyeglasses measured using Accufit in California during the proposed Class Period.

56.     Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia*:

   a.     Whether Defendant misrepresented material facts about its manufacturing process, including the fact that Accufit measurements could not be converted into the manufactured lenses;

   b.     Whether Defendant omitted material facts about its manufacturing process, including the fact that Accufit measurements could not be converted into the manufactured lenses;

   c.     Whether Defendant engaged in deceptive acts or practices, including misrepresenting and/or omitting the fact that Accufit measurements could not be converted into the manufactured lenses; and

   d.     Whether Defendant falsely advertised its manufacturing process at the time of sale, including statements that supposedly more accurate Accufit measurements could be converted into the manufactured lenses.

57.     Plaintiff is a member of the putative Class. The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant, and the relief sought is common.

**CLASS ACTION COMPLAINT**

58.     Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as her interests coincide with, and are not antagonistic to, the other Class members. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

59.     Certification of the Class is appropriate pursuant to Fed. R. C. P. 23(b)(2) and (b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

60.     A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

61.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

## CAUSES OF ACTION

## COUNT I

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.***

62.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 61.

63.     By engaging in the acts and practices described above, Defendant committed one or more acts of "unfair competition" within the meaning of California Business & Professions Code § 17200.  "Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Business & Professions Code §§ 17500, *et seq.*]"

64.     Throughout the Class Period, Defendant engaged in "unlawful" business acts and/or practices by, among other things, violating California Business & Professions Code § 17500.

65.     Throughout the Class Period, Defendant engaged in "unfair" business acts and/or practices by, among other things:

    a.      Engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and members of the Class;

    b.      Engaging in conduct that is immoral, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the Class; and

    c.      Engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

66.     Defendant committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive the public, including Plaintiff and other members of the Class.

67.     As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and/or misleading representations that its prescription eyeglasses were "five times more accurate."

68.     Defendant's unlawful, unfair, and/or fraudulent practices also include omitting the material information that its prescription eyeglasses were not "five times more accurate."

69.     Plaintiff would not have purchased prescription eyeglasses from LensCrafters or

**CLASS ACTION COMPLAINT**

would not have paid as much for them, but for Defendant's misleading statements about the prescription eyeglasses being "five times more accurate."

70.     Plaintiff was injured in fact and lost money as a result of Defendant's conduct of improperly describing its prescription eyeglasses as "five times more accurate."  Plaintiff paid for a product that was "five times more accurate," but did not receive a product that was "five times more accurate."  Even assuming Accufit's measurements were "five times more accurate," these measurements could not be converted into LensCrafters' manufacturing process, meaning the eyeglasses Plaintiff purchased were not "five times more accurate."

71.     Plaintiff and members of the Class seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under California Business & Professions Code § 17203, including, but not limited to, enjoining Defendant from continuing to engage in its unfair, unlawful, and/or fraudulent conduct as alleged.

## COUNT II

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq.***

72.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 61.

73.     Throughout the Class Period, Defendant engaged in unlawful and/or fraudulent conduct under California Business & Professions Code § 17500, *et seq*. ("the False Advertising Law") by engaging in the sale of prescription eyeglasses, and disseminating to the public various advertisements that Defendant knew or reasonably should have known were untrue and misleading. Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

74.     Defendant's advertisements and representations, as described herein, were designed to, and did, result in the purchase and use of the prescription eyeglasses.  Defendant profited from its

17

**CLASS ACTION COMPLAINT**

1   sales of these products to unwary consumers.

2   75.   Plaintiff believed Defendant's representations that its prescription eyeglasses were

3   "five times more accurate."  Plaintiff would not have purchased prescription eyeglasses from

4   LensCrafters and/or would not have paid as much for them had she known the prescription

5   eyeglasses were not "five times more accurate."

6

7   76.   Plaintiff was injured in fact and lost money as a result of Defendant's conduct of

8   improperly describing its prescription eyeglasses as "five times more accurate."  Plaintiff paid for

9   prescription eyeglasses that were "five times more accurate," but did not receive such a product.

10  The product Plaintiff received was worth less than the product for which she paid.

11  77.   Plaintiff and members of the Class seek restitution for monies wrongfully obtained,

12  disgorgement of ill-gotten revenues and/or profits, injunctive relief enjoining Defendant from

13  continuing to disseminate its untrue and misleading statements, and other relief allowable under

14  California Business & Professions Code § 17535.

15

16  ## COUNT III

17  ### QUASI-CONTRACT (UNJUST ENRICHMENT)

18  78.   Plaintiff re-alleges and incorporates by reference herein all of the allegations

19  contained in paragraphs 1 through 61.

20  79.   Plaintiff purchased prescription lenses from Defendant as a direct result of

21  Defendant's misrepresentations and omissions about its ability to convert Accufit measurement

22  system results into eyeglasses that are "five times more accurate."

23

24  80.   Defendant generated profits from its misconduct.

25  81.   Defendant has knowingly and unjustly enriched itself at the expense and to the

26  detriment of the Plaintiff and each member of the Class by collecting money to which it is not

27  entitled.

28

---

18

**CLASS ACTION COMPLAINT**

82.     It would be wrong to permit the Defendant to enrich itself at the expense of the Plaintiff and the Class.  Defendant should be required to disgorge this unjust enrichment.

## COUNT IV

### FRAUDULENT MISREPRESENTATION

83.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 61.

84.     The accuracy of the prescription eyeglasses manufactured by Defendant was a material fact.

85.     Defendant misrepresented this material fact by representing that its prescription eyeglasses were "five times more accurate" because they were measured with the Accufit® Digital Measurement System when, in fact, they were not "five times more accurate."

86.     Defendant made these representations in its advertising (online, in-store, and on television) and on its website.

87.     Defendant knew these representations were false and made these representations with the intention to induce reliance by its customers.

88.     Plaintiff and the Class justifiably relied on Defendant's representations.

89.     Plaintiff was induced to purchase Defendant's prescription eyeglasses as a result of Defendant's fraudulent misrepresentations when she otherwise would not have purchased or would not have paid as much for them, and thereby suffered injury.

## COUNT V

### FRAUDULENT OMISSION

90.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 61.

91.     The accuracy of the prescription eyeglasses manufactured by Defendant was a

**CLASS ACTION COMPLAINT**

material fact.

92.     Defendant omitted this material fact by failing to inform Plaintiff and the Class that its prescription eyeglasses were not, in fact, "five times more accurate."

93.     Defendant omitted this material fact with knowledge of its falsity and with the intent to defraud Plaintiff and the Class.

94.     Plaintiff and the Class justifiably relied on Defendant's omissions.

95.     Plaintiff was induced to purchase Defendant's prescription eyeglasses as a result of Defendant's fraudulent omissions when she otherwise would not have purchased or would not have paid as much for them, and thereby suffered injury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests judgment against the Defendant for themselves and the members of the class as follows:

A.     Certification of the requested Classes pursuant to Fed. R. Civ. P. 23(b)(2);

B.     Restitution of all charges paid by Plaintiff and the Class;

C.     Disgorgement to Plaintiff and the Class of all monies wrongfully obtained and retained by Defendant;

D.     Compensatory and actual damages in an amount according to proof at trial;

E.     Statutory damages, penalties, treble damages, as provided by law;

F.     Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

G.     Costs and fees incurred in connection with this action, including attorney's fees, expert witness fees, and other costs as provided by law;

H.     Punitive damages;

I.     Equitable relief; and

**CLASS ACTION COMPLAINT**

J.      Granting such other relief as the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial for all issues so triable of right.

DATED this 5th day of September,  2017.

Respectfully submitted,

s/ *Charles Reichmann*

Charles P. Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708
Telephone:  (415) 373-8849
Facsimile:   (855) 780-6405

Theodore J. Leopold (to file *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401

Geoffrey A. Graber (SBN 211547)
Sally M. Handmaker (SBN 281186)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

Robert Gordon, Esq (to file *pro hac vice*)
Steve Calamusa, Esq. (to file *pro hac vice*)
**GORDON & DONER**
4114 Northlake Blvd.,
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050

*Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT**